UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT VANGEL,
    Plaintiff,

v.                                     C.A. No. 15-43L

LINDA AUL, et al.,
    Defendants.

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    Plaintiff Robert Vangel, a prisoner at the Adult Correctional Institutions ("ACI"), initiated this civil rights action *pro se* claiming that he is a member of a "culture and way of life" called the Nation of Gods and Earths ("NOGE"). ECF No. 1. Without naming any action taken against him by any specific prison official, the complaint vaguely alleges in conclusory terms that eleven defendants, all employees of the ACI, denied "in some fashion" the right to practice NOGE beliefs, which he describes as akin to a religion. ECF No. 1 at 7. At screening, the District Court allowed the complaint to proceed against Defendant Ashbel T. Wall ("Director Wall") in his official capacity, based on Plaintiff's allegation that prison policy has impeded the practice of a religion, but dismissed all claims against the remaining defendants, including claims against Director Wall individually. ECF No. 4.

    Director Wall has filed a motion to dismiss advancing theories that run the gamut from lack of constitutional standing to failure to meet technical pleading requirements; it is before me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 13. Plaintiff has returned fire with two motions to amend (ECF Nos. 14, 15), which I also address in this report

and recommendation.[1] By contrast with his somewhat vague complaint, Plaintiff's repeated attempts to amend and his lengthy objection to the motion to dismiss describe how specific ACI employees have frustrated his attempts to practice NOGE. For the reasons that follow, I recommend that Director Wall's motion be granted in part and denied in part, and that Plaintiff's motions to amend be denied without prejudice to Plaintiff filing an amended complaint within thirty days of the adoption of this report and recommendation.

I. Background

On February 9, 2015, Plaintiff filed his sixteen page original complaint with its detailed description of NOGE, which he calls a "god centered culture." Since, Plaintiff has attempted to file a total of four amendments, but this pleading (ECF No. 1) remains the operative complaint. In it, Plaintiff alleges that he is a student and practicing member of NOGE. He claims that he and other NOGE members, commonly referred to as the "Five Percenters" or the "Five Percent Nation," belong to what is "best understood as a religious group although members of NOGE refrain from the term religion and consider ourselves a culture and way of life." ECF No. 1 ¶¶ 4, 7, 8. The complaint explains that NOGE adherents reject "religion" as the label for their belief system because it connotes what they consider to be the false religion imposed by ten percent of the population on the enslaved minds of eighty-five percent, leaving only the Five Percenters to pursue the true path "of the true and living god." ECF No. 1 ¶¶ 9, 12, 14. Plaintiff alleges that NOGE members believe "in a divine power to be obeyed as the creator and ruler of the universe;" that they grapple "with issues of ultimate concerns that occupies the place parallel to that filled [by] God in traditionally religious person[s];" and that they "are religious as that

---

[1] Plaintiff's motions to amend were referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A). I deal with them by report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) because denial of the motions could result in the dismissal of Plaintiff's case. See Caranci v. Blue Cross & Blue Shield of R.I., 194 F.R.D. 27, 31 n.1 (D.R.I. 2000) (motion to amend considered dispositive and subject to de novo review when its effect is dispositive of claim).

represents being devout, pious, and godly, thus a god centered culture." ECF No. 1 ¶¶ 10, 11. In connection with these beliefs, NOGE members practice self-imposed dietary restrictions, wear distinctive emblems (claimed to be analogous to the cross to a Christian), and study Five Percenter teachings to attain "knowledge of self" and to "live righteously." ECF No. 1 ¶¶ 21-40.

By contrast with its detailed description of NOGE, the original complaint is largely devoid of allegations of actions affecting Plaintiff specifically, as opposed to NOGE believers generally, by any of the eleven named ACI employees.[2] Rather, it vaguely alleges that "defendants" have denied "all plaintiffs[3] in some fashion the right to practice his beliefs;" that "all defendants" have taken action against "some members" by confiscating and banning NOGE material and imposing discipline time; that "defendants" have wrongly labeled NOGE a gang; and that "all the plaintiff wants is the right to practice [NOGE] . . . without being labeled gang members, security threat, or having our righteous material taken and banned." ECF No. 1 ¶¶ 6-7, 37, 41, 42-46. The allegation that comes closest to specifying an action directly affecting Plaintiff states that "defendants have banned books we've tried to order." ECF No. 1 ¶ 45 (emphasis added). In conclusory fashion, the complaint asserts that the restriction of Plaintiff's right to practice NOGE violates his "first amendment rights of the united states constitution federal and state statutes"[4] and "first amendment rights against the freedom of religious act,"

---

[2] The defendants listed in the original complaint are Linda Aul, chief investigator; Rachael Kowalski, investigator; William Begomes, investigator; Alfred P. Leach, deputy warden; Matthew Kettle, warden; Ashbel T. Wall, director; James Weeden, assistant director; Ken Findlay, program facilitator; Michael B. Grant, attorney; Susan Lankins, program service officer; and "Figueiredo," investigator.

[3] Although Plaintiff is the only named plaintiff, the complaint has several cryptic references to multiple "plaintiffs" and freely uses the pronoun "we." ECF No. 1 ¶¶ 6, 11, 45, 47. The Court may speculate that this is a reference to another prisoner at the ACI, Devon Letourneau, who has also filed a civil rights action claiming that he is a member of NOGE. See Letourneau v. Aul, C.A. No. 14-421L (D.R.I.). As a *pro se* litigant, Plaintiff may appear only on his own behalf. DRI LR Gen 205(a)(1).

[4] Plaintiff's original complaint does not elucidate which "state statutes" he invokes, including whether he is bringing a claim under the state constitution. For example, "state statutes" may refer to the Free Exercise Clause of the Rhode Island Constitution, Article I, § 3, which is interpreted in a similar manner to the Free Exercise Clause of the

3

and that the designation of NOGE as a security threat and the ban on some of its literature violate his free exercise rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. ECF No. 1 ¶¶ 49-51. The original complaint names each defendant in his or her official and individual capacity and seeks both compensatory and punitive damages, as well as a declaratory judgment and injunction to allow ACI Five Percenters to practice NOGE freely and to have access to their preferred texts.[5]

On February 18, 2015, the District Court screened the original complaint. See 28 U.S.C. §§ 1915(b), (e)(2); 1915A. Holding that the vague allegations against "all defendants" did not contain sufficient factual matter against any defendant individually, but that Plaintiff had stated a cognizable claim against Director Wall in his official capacity as a representative of the Rhode Island Department of Corrections ("RIDOC"),[6] the Court dismissed the individual claims against Director Wall and all claims against the other defendants,[7] but granted Plaintiff leave to file an

---

First Amendment. In re Palmer, 386 A.2d 1112, 1114 n.1 (1978). "[S]tate statutes" may also refer to the Rhode Island Religious Freedom Restoration Act ("RFRA"), R.I. Gen. Laws § 42-80.1-1 *et seq.*, which is the state analog to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Compare 42 U.S.C. § 2000cc-1(a), with R.I. Gen. Laws § 42-80.1-3. One significant difference between RLUIPA and Rhode Island's RFRA is that the latter permits damages claims against government agencies while the former does not. Compare Cryer v. Spencer, 934 F. Supp. 2d 323, 333-34 (D. Mass. 2013) (First Circuit has not ruled on issue, but Circuits that have answered the question have held monetary damages not available under RLUIPA), with R.I. Gen. Laws § 42-80.1-4(2) (court may award prevailing plaintiff damages under state RFRA statute). If Plaintiff files an Amended Complaint, he should clarify what provisions of state law he intends to rely upon, if any.

[5] While the complaint does not expressly invoke 42 U.S.C. § 1983, in recognition of Plaintiff's *pro se* status, Director Wall acknowledges the Court should treat the First Amendment claims as based on § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (state official sued in official capacity, when sued for injunctive relief, is a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State). By contrast, RLUIPA permits direct claims "against a government," which can include prison officials sued in their official (but not individual) capacities. See 42 U.S.C. § 2000cc–2(a); Pabon v. Cheshire Cnty. Dep't of Corr., No. 15-CV-115-LM, 2015 WL 2092808, at *1 (D.N.H. May 5, 2015); Harris v. Schriro, 652 F. Supp. 2d 1024, 1029 (D. Ariz. 2009).

[6] A suit against Director Wall in his official capacity amounts to suit against his office. Will, 491 U.S. at 71; Christy v. Pa. Tpk. Comm'n, 54 F.3d 1140, 1143 n.3 (3d Cir. 1995) ("suit against the individual defendants in their official capacities is the same as a suit against the [agency].").

[7] Director Wall's motion to dismiss argues that claims against him in his individual capacity should be dismissed. It is not necessary to reach this argument because the District Court has already dismissed these individual-capacity claims. In any event, as presently crafted the complaint fails to state a claim against Director Wall in his individual

4

amended pleading asserting plausible facts that actions have been taken against himself by any or all of the defendants in their individual capacities. ECF No. 4. After screening but before service, Plaintiff responded with two "Amended Complaints." ECF Nos. 7, 8. Neither is a stand-alone complaint as each lacks such foundational elements as a cause of action or prayer for relief. Rather, the first "Amended Complaint" adds new factual allegations pertaining to dismissed defendant Michael B. Grant, an ACI attorney, claiming that he was responsible for banning NOGE texts, causing Plaintiff stress and to feel empty, while the second "Amended Complaint" adds facts about dismissed defendant Linda Aul, the ACI's chief investigator, claiming that she confiscated the Five Percenter newspaper. ECF Nos. 7, 8. By text order, the District Court struck both and ordered the original complaint served on Director Wall, but made clear that, after Director Wall responds to the original complaint, Plaintiff "may file the appropriate papers" to amend. Text Order of Mar. 6, 2015.

On May 12, 2015, Director Wall responded with this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has not alleged an injury to himself and lacks constitutional standing; that Plaintiff cannot collect monetary damages against Director Wall in his official capacity; and that NOGE is a cultural viewpoint and not entitled to any of the protections of the practice of religion by prisoners that are guaranteed by state and federal law. The motion also argues that the original complaint should be dismissed for failure to comport with the technical pleading requirements in Fed. R. Civ. P. 8 and 10. Plaintiff rejoined with two lines of defense.

---

capacity because it does not plead facts alleging his direct involvement or an affirmative link between the acts of ACI employees and Director Wall's action or inaction that led inexorably to a constitutional violation. See generally Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009). Because they were dismissed at screening, Director Wall's individual capacity argument will not be discussed further in this report and recommendation.

First, relying on the District Court's text order, Plaintiff has filed two more motions "for amended complaint." ECF Nos. 14, 15. Like the pre-service attempts to amend, they are flawed in that neither is a stand-alone pleading. Rather, they seek to augment the text of the original complaint without restating the entire pleading. They aim to insert Linda Aul and Michael Grant (the targets of the earlier motions to amend), as well as dismissed defendant William Begomes, an ACI "investigator for special investigations," in lieu of "all defendants" in several of the complaint's paragraphs, resulting in the allegations that Ms. Aul, Mr. Grant and Mr. Begomes banned NOGE texts and prohibited "plaintiff [from] study[ing] required lessons that are the core tenets of [NOGE]." ECF Nos. 14, 15. Second, Plaintiff supports his objection with a ten page affidavit and fifty-seven pages of attachments, which explain how specific ACI staff, including Director Wall, have prevented Plaintiff personally "from practicing their culture by labeling all members *and the plaintiff* 'gang members,' and by going at great lengths to ban all publications on the NOGE." ECF No. 17 at 3 (emphasis supplied). The affidavit details the denial of Plaintiff's access to Five Percenter texts and the limitations placed on his ability to practice NOGE. ECF No. 18. The affidavit attachments include Plaintiff's grievances to Director Wall and a letter from Director Wall to Plaintiff informing him that one NOGE text is "banned from all facilities by the Office of Legal Counsel" because it "poses a threat to the safety and security of the institutions." See ECF No. 18-20 at 1, ECF No. 18-21 at 5, ECF No. 18-23 at 1-2.

## II. LAW AND ANALYSIS

### A. Article III Standing and Injury in Fact

Standing – a litigant's right to be in the courtroom – must be established in every case, as the Constitution permits federal courts to address only "actual cases and controversies." Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 8 (1st Cir. 2014). Constitutional standing implicates

the court's subject-matter jurisdiction. Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 52 (1st Cir. 2014). An actual case or controversy exists only when the party asserting federal court jurisdiction establishes "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). To satisfy the personal stake requirement, a plaintiff must allege injury in fact, that is, facts establishing that the plaintiff personally suffered harm. Id. Director Wall claims that Plaintiff lacks standing because his original complaint does not allege that any NOGE literature has been confiscated or withheld from Plaintiff and therefore fails to plead an injury in fact. ECF No. 13 at 8. With no factual assertions that Director Wall or any named ACI employee directed actions against Plaintiff, at most he is asserting injuries suffered by other prisoners. ECF No. 13 at 9.

This motion to dismiss for lack of standing purports to rely on Fed. R. Civ. P. 12(b)(6) based on the failure to state a claim; however, the existence of injury in fact is a legal question invoking Article III of the Constitution, and thus is properly contested by a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). See Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006); DeVona v. Zeitels, No. CIV. 13-10952-RWZ, 2014 WL 972145, at *5 n.5 (D. Mass. Mar. 12, 2014).[8] While the distinction between Rule 12(b)(1) and Rule 12(b)(6) is usually illusory, because both require the court to accept as true all well-pleaded factual averments and to indulge all reasonable inferences in plaintiff's favor, Katz, 672 F.3d at 70-71, a motion under Rule 12(b)(1) permits the court to go beyond the complaint and consider facts in an affidavit or

---

[8] By contrast, a motion to dismiss based on prudential standing – that is, standing concerns that do not implicate the structural concerns of Article III – is generally brought under Rule 12(b)(6) and not Rule 12(b)(1). See, e.g., Fryzel v. Mortg. Elec. Registration Sys., Inc., No. CA 10-352 M, 2011 WL 9210454, at *7 (D.R.I. June 10, 2011); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014) (prudential standing is not derived from Article III).

7

motion to amend as "further particularized allegations of fact deemed supportive of plaintiff's standing." McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

Here, when Plaintiff's four attempts to amend and his detailed objection and affidavit are read with the leniency required for *pro se* filings, it is clear that he has presented more than enough to clear the Article III standing hurdle. For example, the amended complaints allege that defendant Michael Grant denied him a core NOGE text and defendant Linda Aul banned publications that denied his ability "to receive religious/cultural instruction and spiritual enlightenment." See ECF No. 7 ¶¶ 9, 11; ECF No. 8 ¶¶ 4, 8. Similarly, his objection alleges that Director Wall and other ACI employees have prevented him from practicing NOGE by classifying it as a security risk and banning publications, ECF No. 17 at 3, while his affidavit and attached documents indicate that many ACI employees, including Director Wall, have known about and participated in the denial of Plaintiff's access to Five Percenter texts. See ECF No. 18-20 at 1, ECF No. 18-21 at 5, ECF No. 18-23 at 1-2.

These allegations easily cross the threshold – Plaintiff plainly has asserted "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014). By claiming that ACI employees classified his belief system as a security risk, confiscated or banned his Five Percenter materials and restricted his ability to practice NOGE, he has alleged enough to satisfy the injury in fact requirement within the meaning of Article III.

**B. Arguments Based on Failure to State a Claim under Rule 12(b)(6)**

Tacking back to the proper realm of Fed. R. Civ. P. 12(b)(6), Director Wall argues that the original complaint is deficient in that he cannot be liable for damages for actions taken in his

8

official capacity and that Plaintiff's free exercise claims protect only religion and not cultural views or beliefs. Accordingly, he contends that the complaint should be dismissed for failure to state a claim upon which relief can be granted. Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). To survive such a motion to dismiss, a complaint must allege facts plausibly entitling plaintiff to the relief sought. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). When the viability of a complaint is tested by such a motion to dismiss, its well-pleaded factual allegations must be taken as true and Plaintiff must be afforded the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). Because he is *pro se*, Plaintiff's pleading must be read with an "extra degree of solicitude" and be liberally construed. Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991).

Director Wall's first argument can be dealt with quickly; it is black-letter law that he cannot be liable for damages under 42 U.S.C. § 1983 for actions taken in his official capacity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-71 (1989) (§ 1983 claim); Brown v. Rhode Island, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) (§ 1983 claim); Cryer v. Spencer, 934 F. Supp. 2d 323, 332 (D. Mass. 2013) (RLUIPA claim). To the extent Plaintiff seeks damages against Director Wall in his official capacity, such claims are not cognizable under § 1983 as a matter of law and should be dismissed;[9] official capacity defendants under § 1983 may be sued only for declaratory and injunctive relief.

---

[9] Director Wall's Fed. R. Civ. P. 12(b)(6) motion is ambiguous with respect to whether it seeks dismissal of any damage claims ostensibly asserted under RLUIPA. In the interest of efficiency, I reach out and address the question, concluding, consistent with the interpretative trend in the Circuits that have considered the question, that Plaintiff's RLUIPA claims do not support a claim for damages. Van Wyhe v. Reisch, 581 F.3d 639, 655 (8th Cir. 2009), cert. den. sub nom., Reisch v. Sisney, 560 U.S. 925 (2010), cert. den., 131 S. Ct. (2011) (state's sovereign immunity bars suit for monetary damages under RLUIPA); Cryer, 934 F. Supp. 2d at 333-34 (courts that have addressed question hold that monetary damages not available under RLUIPA). Accordingly, to the extent that the complaint may be interpreted as asserting damage claims under RLUIPA, I also recommend that they be dismissed. On the other hand, as presently pled, the complaint does not clearly invoke Rhode Island's RFRA, which may permit damage claims. To be clear, unless Plaintiff amends, all damage claims pending against Director Wall are gone if the Court adopts this recommendation.

9

Director Wall's second argument focuses the Court on the metaphysical question of what is religion. Relying on Plaintiff's allegation that NOGE "members . . . refrain from the term religion," he contends that this admission is fatal to the claim that Plaintiff's constitutional or statutory rights have been infringed. Put differently, if Plaintiff has admitted that NOGE is not a "religion," or if the complaint fails plausibly to plead that it is, the practice of NOGE is not protected by the First Amendment or RLUIPA.

There is no question that the Free Exercise Clause protects only sincerely held beliefs that are "rooted in religion." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 713 (1981). Similarly, but more broadly, RLUIPA protects "religious exercise," defined "as any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While these provisions protect only religious, as opposed to secular or cultural, beliefs and practices, courts have long acknowledged that the line is difficult to draw. Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 833 (1989); Koger v. Bryan, 523 F.3d 789, 797 (7th Cir. 2008). As the Third Circuit has aptly stated, "Judges are not oracles of theological verity, and the Founders did not intend for them to be declarants of religious orthodoxy." Africa v. Commonwealth of Pa., 662 F.2d 1025, 1030 (3d Cir. 1981). "[W]hat is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question." Wisconsin v. Yoder, 406 U.S. 205, 215 (1972); see United States v. Manneh, 645 F. Supp. 2d 98, 108 (E.D.N.Y. 2008) ("distinguishing between the religious and the secular can pose seemingly insurmountable semantic obstacles, for what is 'religious' may readily be characterized as an earnestly adopted way of life, an inherited cultural practice, an ardently held philosophical belief, or a personal choice reflecting deep and abiding convictions of conscience").

Religious belief or exercise need not be "acceptable, logical, consistent, or comprehensible to others" to merit protection. Thomas, 450 U.S. at 714. RLUIPA, no less than the Free Exercise Clause, is "not limited to beliefs which are shared by all of the members of a religious sect." Holt v. Hobbs, 135 S. Ct. 853, 862-63 (2015). It is well settled that a plaintiff is not required to show that his beliefs are central to a mainstream religion. United States v. Zimmerman, 514 F.3d 851, 853-54 (9th Cir. 2007) (per curiam). In light of the complexity of the question, determining what constitutes a religious belief or exercise has long been recognized as requiring a fact-intensive plaintiff-by-plaintiff analysis. See Coward v. Jabe, 532 F. App'x 328, 331 (4th Cir. 2013) (per curiam); Zimmerman, 514 F.3d at 854; Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004); Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir. 1991); Cookson v. Comm'r, Me. Dep't of Corr., No. 1:10-CV-00256-JAW, 2012 WL 32378, at *8 (D. Me. Jan. 4, 2012).

In dealing with Free Exercise or RLUIPA claims based the denial of the right to practice NOGE, several courts have dodged this complex threshold issue by assuming without deciding that NOGE is religious at the pleadings stage, at summary judgment and even at trial. See, e.g., Allah v. Virginia, 601 F. App'x 201, 204 (4th Cir. 2015) (per curiam) (assumption made at trial); Miles v. Guice, No. 5:13-CT-3193-FL, 2015 WL 847411, at *4 (E.D.N.C. Feb. 26, 2015) (motion to dismiss); Coward v. Jabe, No. 1:10CV147 LMB/TRJ, 2014 WL 932514, at *4 (E.D. Va. Mar. 10, 2014) (summary judgment); see also Fraise v. Terhune, 283 F.3d 506, 513 (3d Cir. 2002) (Alito, J.) (summary judgment). The courts that have tackled the question head-on generally hold that NOGE's aversion to the word "religion" is a matter of semantics; the real issue is whether NOGE has the indicia of a system of religious belief or practice. See, e.g., Joseph v. Fischer, 900 F. Supp. 2d 320, 325 (W.D.N.Y. 2012) (plaintiff eschewed "religion," but

11

court found NOGE should be considered religious); Wright v. Fayram, No. C11-0001, 2012 WL 2312076, at *12 (N.D. Iowa June 18, 2012) (same); Marria v. Broaddus, No. 97 CIV.8297 NRB, 2003 WL 21782633, at *11-12 (S.D.N.Y. July 31, 2003) (same); see also Hardaway v. Haggerty, No. 05-70362, 2010 WL 1131446, at *2-3 (E.D. Mich. Mar. 22, 2010) (based on expert affidavits, court determines NOGE ideology is religious).

Plaintiff's complaint is replete with allegations clothing NOGE with the indicia of a system of religious belief or practice. For example, he claims that its practice requires dietary restrictions and fasting, wearing distinctive emblems, studying its texts and teachings and participating in daily individual and group lessons. ECF No. 1 ¶¶ 21, 22, 23, 34. Similarly, Plaintiff describes NOGE as "God centered culture" whose members "live righteously." ECF No. 1 ¶¶ 33, 39. This is more than enough to survive a motion to dismiss based on the proposition that the complaint fails to allege that NOGE is religious practice or exercise. See, e.g., Wright, 2012 WL 2312076, at *12 (plaintiff's practice of NOGE deemed religious based on fasting rituals, converting to NOGE and exclusivity of practicing NOGE and no other religion); Marria, 2003 WL 21782633, at *8-9, 11 (NOGE considered religious where plaintiff alleged NOGE resurrected him to life of righteousness, studied NOGE texts, lived by teachings and observed holy days); Breland v. Goord, No. 94 CIV. 3696(HB), 1997 WL 139533, at *4 (S.D.N.Y. Mar. 27, 1997) (plaintiff assertion that beliefs required daily study of Five Percenter text indicated NOGE is religious); but see Harrison v. Watts, 609 F. Supp. 2d 561, 566-74 (E.D. Va. 2009) (*pro se* plaintiff's insistence that NOGE not religious doomed claim).

I find that Plaintiff has adequately pled that NOGE constitutes a religious belief or practice within the meaning of the First Amendment and RLUIPA. His case should not be dismissed on this ground.

**C. Plaintiff's Motions to Amend and Procedural Deficiencies in the Complaint**

The last matters for consideration are Plaintiff's two pending motions to amend the complaint and Director Wall's related argument for dismissal based on the failure of the original complaint and all four of the amendments to comply with Fed. R. Civ. P. 8 and 10. In evaluating these arguments, this Court is guided by Fed. R. Civ. P. 15, which instructs courts to "freely give leave" to amend, Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015), although an amendment should not be granted if the proposed pleading remains defective. See HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 570 (1st Cir. 2014) (motion to amend should be denied as futile if proposed pleading fails to state claim on which relief may be granted). In this case, the Court must also remain mindful that Plaintiff has not yet had the opportunity to amend proffered to him in this Court's screening decision and repeated in the March 6, 2015 Text Order.

On the other hand, Director Wall correctly points out that the original complaint does not satisfy Fed. R. Civ. P. 8(a) because it lacks the required "short and plain statement" regarding which defendants are alleged to have committed which act directly affecting Plaintiff. Director Wall is also right that the original complaint violates Fed. R. Civ. P. 10(b) because it uses the same paragraph numbers in two sections, which makes it difficult to respond to all the averments in the Complaint. With these deficits, the pleading fails to place him on notice as to what Plaintiff has alleged against whom. Although Plaintiff's pending motions "for amended complaint" (ECF Nos. 14, 15) go part of the way towards curing these defects in that they make specific factual allegations against three dismissed defendants, Linda Aul, Michael Grant and William Begomes, they still fail because they do not purport to be stand-alone pleadings. Rather, they identify paragraphs 7, 43, 44, 45, 46 and 47, to which they seek to add additional text.

Director Wall appropriately points out that allowance of the motions to amend will only further complicate the state of pleading.

In the interest of judicial efficiency, the best solution is to deny Plaintiff's two motions to amend, but grant him leave to file an amended complaint that comports with Fed. R. Civ. P. 8 and 10. In this amended complaint, Plaintiff should assemble in a single coherent pleading all of the components of a complaint he wishes to retain from his original complaint, all of the plausible factual allegations that he wishes to assert against specific ACI employees in their individual capacities[10] as laid out in his four proposed amendments and all of the plausible facts in his opposition and affidavit that describe how the actions of the named defendants affected him personally. He is reminded that, pursuant to Fed. R. Civ. P. 8(a), his amended pleading must contain a short and plain statement of the grounds for the court's jurisdiction, the claims showing the pleader is entitled to relief and a demand for the relief sought; if he is invoking state law, he must make that clear. Among other things, the pleading should contain the factual basis for the injuries or harms that Plaintiff has personally suffered and make specific allegations against each person who is named as a defendant. Under Rule 10, it must have a caption and separately-numbered paragraphs that set out the claims, with each paragraph limited to a single set of circumstances. Fed. R. Civ. P. 10(a)-(b). Finally, Plaintiff is reminded that an amended complaint will completely displace the original pleading, so that any parts of the original

---

[10] I do not recommend that Plaintiff be given leave to sue additional defendants in their official capacities because it would be redundant of the official capacity claims already pending against Director Wall. See, e.g., Decotiis v. Whittemore, 635 F.3d 22, 38 n.19 (1st Cir. 2011); Stevens v. Hous. Auth. of S. Bend, 720 F. Supp. 2d 1013, 1022 (N.D. Ind. 2010); Carmody v. Vill. of Rockville Ctr., 661 F. Supp. 2d 299, 329 (E.D.N.Y. 2009). The official capacity suit against Director Wall is sufficient to support Plaintiff's claims for declaratory and injunctive relief under both § 1983 and RLUIPA. See, e.g., Will, 491 U.S. at 71 n.10 (§ 1983 claim); Warner v. Patterson, 534 F. App'x 785, 788 (10th Cir. 2013) (RLUIPA); Cryer, 934 F. Supp. 2d at 334 (RLUIPA). If Plaintiff wishes to sue under § 1983 for money damages, he must state specific factual claims against specific state actors in their individual capacities. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008); Green v. Taylor, No. C 12-5933 CRB PR, 2013 WL 896143, at *1 (N.D. Cal. Mar. 8, 2013).

complaint that he intends to survive the amendment must be restated in it. See Global ePoint, Inc. v. GTECH Corp., 58 F. Supp. 3d 178, 190 (D.R.I. 2014) ("amended complaint typically renders the original complaint 'dead letter'") (citing Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008)).

If Plaintiff does not file an amended complaint within thirty days of the adoption of this report and recommendation, the case will continue in its current posture – that is, as the District Court ruled at screening, the case may proceed against Director Wall in his official capacity with claims limited to declaratory and injunctive relief.[11]

## III.   CONCLUSION

Based on the foregoing, I recommend that Director Wall's motion to dismiss (ECF No. 13) be granted to the extent that Plaintiff has attempted to sue Director Wall under § 1983 or under RLUIPA in his official capacity for monetary damages and denied in all other respects. I further recommend that Plaintiff's motions to amend (ECF Nos. 14, 15) be denied, without prejudice to Plaintiff filing an amended complaint within thirty days of the adoption of this report and recommendation. The amended complaint should conform to the pleading requirements in Fed. R. Civ. P. 8 and 10 and state plausible factual allegations against specific defendants in their individual capacities that describe how those defendants have interfered with Plaintiff's alleged constitutional and statutory rights to practice NOGE at the ACI. Finally, if Plaintiff does not file an amended complaint within thirty days of the adoption of this report and recommendation, the case will proceed against Director Wall in his official capacity for declaratory and injunctive relief only.

---

[11] The Court alerts the parties that, whether or not the complaint is amended, this case is under consideration for consolidation with Letourneau v. Aul, C.A. No. 14-421L (D.R.I.). Mr. Letourneau also alleges that he is a professed member of NOGE and has made claims that appear similar to those made by Plaintiff.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 19, 2015